extent that it seeks punitive damages for an alleged breach of contract.

An appropriate order will follow.

Gary E. McCafferty, Joseph A. Goldbeck, Jr., Philadelphia, Pa., for movant, Industrial Valley Bank.

Robert C. Perry, Wilson & Perry, P.C., Philadelphia, Pa., for debtors, William R. Keul and Concetta Keul.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

**In re William R. KEUL, Concetta Keul, Debtors.**

**Bankruptcy No. 87–02612F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 3, 1987.

## MEMORANDUM OPINION

BRUCE FOX, Bankruptcy Judge:

Industrial Valley Bank (IVB) has filed a motion to dismiss this bankruptcy case pursuant to 11 U.S.C. § 109(g)(2). In their response, the debtors, William and Concetta Keul, have conceded, in large part, the factual underpinnings of IVB's request but contend that circumstances make dismissal inequitable. After considering all of the evidence presented at trial, I must grant IVB's motion.

### I.

The debtors' first bankruptcy case was filed under chapter 13 on December 6, 1983. Later, their reorganization plan was confirmed by order entered August 30, 1984. The docket entries for that case, Bankr. No. 83–04722K, which were admitted into evidence along with various admissions, *see In re Key*, 58 B.R. 59 (Bankr.E. D.Pa.1986) (movant must offer evidence, not merely argument, to support a motion to dismiss under section 109(g)), state that this case was dismissed on motion of the standing chapter 13 trustee on January 24, 1985. However, at the trustee's request, the case was reinstated and the dismissal order vacated on March 15, 1985. More than one year later, on May 29, 1986, IVB filed a motion for relief from the automatic stay in accordance with 11 U.S.C. § 362(d). On July 9, 1986, an order was entered granting the motion for relief by agreement of the parties. The next docket entry is dated May 12, 1987, and notes that the

debtors filed a praecipe [1] to voluntarily dismiss their bankruptcy case, *see* 11 U.S.C. § 1307(b), and an order of dismissal was entered on May 18, 1987. The present chapter 13 bankruptcy case was filed on May 29, 1987, less than two weeks after the dismissal of the earlier petition and well within the 180 day proscription of section 109(g).

Mr. Keul was called as a witness and, in his testimony, he conceded that the sequence set forth above was accurate. He also acknowledged that the voluntary dismissal and subsequent refiling were done on the advice of current counsel to forestall an impending foreclosure sale of his home. He explained that his prior attorneys in his earlier bankruptcy case had not, in his opinion, served him well. His difficulty with IVB came from his failure to make all postpetition mortgage payments as they came due which, in turn, stemmed, in part, from the confusion surrounding the involuntary dismissal of his case in January 1985. He also felt that the agreement granting IVB relief from its automatic stay was ill advised. Under the terms of that settlement, he was to pay IVB 150% of his normal monthly mortgage payment every month until his postpetition delinquency was cured. In return, IVB was to obtain relief from the stay but would not attempt to foreclose so long as it received the agreed upon postpetition payments. Unfortunately, Mr. Keul could not afford the payment agreed to, defaulted on the settlement and IVB resumed foreclosure proceedings. Upon cross-examination, the debtor admitted that he and his wife were substantially behind in their postpetition mortgage payments to IVB during the course of the earlier bankruptcy case and that no postpetition payments had yet been sent to IVB during the instant bankruptcy case, as the debtors were awaiting the resolution of this motion to dismiss.·

## II.

In 1984, Congress added 11 U.S.C. § 109(f) to the Bankruptcy Code, as part of the consumer credit provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353. In 1986, Congress again amended the Code and section 109(f) was recodified as section 109(g) without any alteration to its provision. The design of the 1984 consumer credit amendments, such as section 109(f), was to respond to Congressionally perceived abuses of various provisions of the Bankruptcy Code by individual debtors. *See* 130 Cong. Rec. S 8894 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in,* Appendix 3 *Collier on Bankruptcy,* at XX–68 (15th ed. 1987) (*"Collier"*).

Current section 109(g) states:

(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceeding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

In large measure, section 109(g)(2) is the Congressional response to the perceived abuse of 11 U.S.C. § 1307(b), which allows a chapter 13 debtor the absolute right to dismiss his case at any time, so long as the case was not converted. *See In re Turiace,* 41 B.R. 466 (Bankr.D.Ore.1984); H.R. Rep. No. 95–595, 95th Cong. 1st Sess. 428 (1977); 5 *Collier* ¶ 1307.01[3][i]. By dismissing and then refiling, a debtor could avoid the consequences of a creditor's obtaining relief from the stay because refiling once again brings into play the automatic stay provisions of section 362(a). By timing the refiling for the eve of sheriff's sale, the debtor could frustrate indefinitely

---

1. *But see* Local Bankr. Rule 1017.1 (debtor electing to voluntarily dismiss chapter 13 case shall

do so by motion).

the ability of a secured creditor to foreclose. *See Matter of Patton*, 49 B.R. 587, 589 (Bankr.M.D.Ga.1985). As Collier notes:

> Thus, section 109(g) prevents certain tactics on the debtor's part that could be deemed abusive. The debtor who does not appear as required or who disobeys the court's orders and suffers dismissal of the case as a result is explicitly prevented from immediately filing another petition; under such circumstances, instant refiling would thwart the court's effort to preserve its authority. The debtor who obtains dismissal of the case when faced with a motion for relief from the section 362 automatic stay may not immediately refile and thereby frustrate creditors attempts at having their rights adjudicated within a reasonable period of time.

2 *Collier* ¶ 109.06, at 109–29 (footnotes omitted); *accord, e.g., In re Smith*, 58 B.R. 603, 605 (W.D.Pa.1986); *In re Ransom*, 60 B.R. 19 (Bankr.E.D.Pa.1986).

In the matter at bench, there is no dispute that the debtors voluntarily dismissed their earlier bankruptcy petition after a creditor sought (and obtained) relief from the stay and then refiled within 180 days. If section 109(g)(2) must be applied, then this case must be dismissed, for Mr. and Mrs. Keul would not fall within the statutory definition of individuals who qualify as debtors. *In re Smith*. However, the Keul's argue that the provisions of § 109(g)(2) need not be followed when this court, in its discretion, deems the result inequitable.

In general, those courts which have considered the debtors' argument have rejected it. In *In re Keziah*, 46 B.R. 551, 554 (Bankr.W.D.N.C.1985), the court stated:

> Had Congress intended to grant the Bankruptcy Judges discretion in such matters, one would imagine it would have placed the 180 day rule in a Code section other than § 109. For example, § 109(f) could have been made a part of § 707, § 1112, or § 1325 thereby giving the Courts the opportunity to exercise discretion in the application of its provi-

sions. However, § 109 is a part of the eligibility (to be a debtor) section which involves the subject matter jurisdiction of this Court. The 180–day rule having been placed there, the Court has no choice but to apply it for indeed, it lacks the power to do otherwise.

*Accord, In re Smith*, 58 B.R. at 604; *In re Denson*, 56 B.R. 543, 544 (Bankr.N.D.Ala. 1986).

On the other hand, Collier states:

> Since the purpose of this provision was to prevent the abusive filing of new petitions close on the heels of legitimate requests for relief from the automatic stay, the language prohibiting a new case "following" a request for relief from the stay probably implies a causal relationship between the two events. The legislative purpose would not be served by prohibiting a new case filed after a request for relief from the stay which was denied. Nor should this provision apply when the voluntary dismissal and new petition are remote in time from and clearly not related to a request for relief from the stay filed years earlier.

5 *Collier* ¶ 1300.12[10], at 1300–49 to 50. (footnote omitted); *accord, Matter of Patton* (§ 109(g)(2) does not apply where creditor who sought relief from stay has obtained all the relief desired and would not be adversely affected by refiling).

In order to decide this motion, I need not reach the question whether the provisions of section 109(g) must be followed literally; for even if I assume *arguendo* that some discretion in application may be utilized, there is no basis in the record before me warranting the exercise of such discretion. The debtors concede that their actions in dismissing their former case and refiling the present petition were done to frustrate a creditor who had obtained relief from stay and was about to foreclose. As Collier notes, this is the very ill section 109(g)(2) was designed to cure. The instant case does not present a situation where the dismissal was unconnected to the motion for relief; nor does it involve a

case where the request for relief was denied.

Moreover, I am unpersuaded that the debtors' beliefs, that they were poorly advised by counsel and that their postpetition delinquency was caused by the trustee's action, are justified. The postpetition delinquency was many months greater than the two month time period during which the trustee's dismissal was in effect; and the size of the postpetition delinquency may have made any defense to the motion futile. *See In re Keays,* 36 B.R. 1016 (Bankr.E.D.Pa.1984); *In re Frascatore,* 33 B.R. 687 (Bankr.E.D.Pa.1983).

More importantly, if the debtors believed that reimposition of a stay against IVB was warranted, they could have sought such relief within the confines of their former bankruptcy case. Although not readily granted, courts are empowered, by virtue of section 105(a), to alter an earlier decision under section 362(d) and protect property of the estate when warranted. *See, e.g., In re W.E. Tucker Oil, Inc.,* 42 B.R. 897, 898 (Bankr.W.D.Ark.1984); *In re Brusich & St. Pedro Jewelers, Inc.,* 28 B.R. 545, 549 (Bankr.E.D.Pa.1983); *In re Prime, Inc.,* 26 B.R. 556, 558–559 (Bankr. W.D.Mo.1983). Moreover, an order granting relief from stay is subject to being altered or vacated pursuant to Fed.R.Civ.P. 60(b)(6) and Bankr. Rule 9024. *See In re Durkalec,* 21 B.R. 618 (Bankr.E.D.Pa. 1982). Pursuit of these courses is much fairer to the creditor than the approach of dismissal and refiling and avoids the concerns underlying section 109(g)(2). Filing a motion to reinstate the stay under Bankr. Rule 9024 or 11 U.S.C. 105(a), does not, by itself, prevent the creditor from pursuing its state law remedies while the motion is pending. However, dismissal and refiling automatically resurrects a stay which had already been lifted, without any opportunity for the creditor to protest. Even if the secured creditor ultimately obtains a court order once again lifting the stay, it may be significantly delayed in obtaining its state law remedies.

However one interprets the language of section 109(g)(2), Congress clearly determined that a debtor cannot voluntarily dismiss a bankruptcy case after a creditor has obtained relief from the stay and then file another bankruptcy petition within 180 days solely to avoid the consequences of the earlier order granting relief. To do so is an abusive use of section 362(a) and 1307(b). Yet, here, that is exactly the course of conduct taken by these debtors.

Based upon the record before me, there is no justification for not applying section 109(g)(2). Therefore, the motion to dismiss this bankruptcy case must be granted. An appropriate order will be entered.