**In re Hans–Wolf G. MUNKWITZ and L. Elizabeth Munkwitz.**

No. CIV.A. 99–1575.
Bankruptcy No. 97–34889F.

United States District Court,
E.D. Pennsylvania.

May 14, 1999.

for a period of 180 days.[1]  Jurisdiction exists under 28 U.S.C. § 158(a).

On December 8, 1997, appellants filed a voluntary Chapter Thirteen petition in bankruptcy.[2]  On April 10, 1998, Aames Capital Corporation moved to terminate the automatic stay under 11 U.S.C. § 362 claiming a four-month delinquency in post-bankruptcy mortgage payments.  Appellants opposed this motion and a hearing was scheduled for July 16, 1998.  On the eve of the hearing date, the parties reported the matter settled.

On May 6, 1998, appellants also filed an adversary proceeding in the Bankruptcy Court (Adv. No. 98–0244) to invalidate Aames' mortgage, and a trial was scheduled.  However, on February 22, 1999, appellants having filed a praecipe under 11 U.S.C. § 1307(b), the Bankruptcy Court dismissed their petition.  That order barred debtors from again filing for bankruptcy within 180 days, citing 11 U.S.C. § 109(g)(2).  On appeal, appellants assert that it was error to have imposed the 180-day restriction in this case.

Section 109(g) reads, in relevant part:

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

\* \* \* \*

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g)(2).  Its purpose was to "prevent debtors from using repetitive fil-

Carl N. Weiner, Hamberg, Rubin, Mullin & Maxwell, P.C., Lansdale, PA, for Debtors.

L. Elizabeth Munkwitz, Harleysville, PA, Pro se.

Hans–Wolf G. Munkwitz, Harleysville, PA, Pro se.

Edward Sparkman, Philadelphia, PA, Chapter 13 Trustee, Pro se.

Leslie E. Puida, Federman and Phelan, Philadelphia, PA, for Aames Capital Corp.

Frederick J. Baker, Assistant U.S. Trustee, Philadelphia, PA, Pro se.

## MEMORANDUM

LUDWIG, District Judge.

This is an appeal by debtors Hans–Wolf G. Munkwitz and L. Elizabeth Munkwitz from the Bankruptcy Court order of February 22, 1999 dismissing their bankruptcy petition and barring another filing by them

---

1. On appeal, the Bankruptcy Court's conclusions of law are subject to plenary review. See Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir.1995).

2. The facts of this case are derived from the record on appeal—including Bankruptcy (now Chief) Judge Fox's memorandum decision of March 10, 1999 and appellant debtors' appellate brief.  No other brief was filed.

ings as a method of frustrating creditor's efforts to recover what is owed them." 2 *Collier on Bankruptcy* § 109.08, 109–48 (15th ed. Revised 1999); *see also In re Richardson*, 217 B.R. 479, 488 n. 15 (Bankr.M.D.La.1998) (discussing legislative history); *In re Keul*, 76 B.R. 79, 80–81 (Bankr.E.D.Pa.1987).

Yet, this seemingly unenigmatic statutory provision has generated significant debate among courts and commentators. The dispute centers around the meaning of the term "following"—in the phrase "following ... a request for relief from automatic stay." One line of reasoning at least implicitly interprets "following" to mean "after" and holds that the statute must be applied without regard to the circumstances or the equities of a particular bankruptcy.[3] Consequently, whenever a debtor obtains a voluntary dismissal after a creditor has filed a motion to be relieved from a stay, § 109(g)(2) is triggered. This occurs irrespective of the time interval between the two events or the disposition of the creditor's motion. Here, in accordance with this view, the Bankruptcy Court imposed the 180–day prohibition. *In re Munkwitz*, Bankr.No. 97–34889F, Mem., March 10, 1999, at 7–8.

Appellants, however, urge this Court to follow the case authority that requires a showing of a causal relationship between the voluntary dismissal and a creditor's motion for stay relief. The rationale for

this approach is that "following," when interpreted in light of legislative purpose, means "because of" or "as a result of." *See In re Sole*, 233 B.R. 347, (Bankr. E.D.Va.1998); *In re Duncan*, 182 B.R. 156, 159–60 (Bankr.W.D.Va.1995); *In re Copman*, 161 B.R. 821, 823–24 (Bankr.E.D.Mo. 1993); *see also* 2 *Collier on Bankruptcy* § 109.08 at 109–50.[4]

The cases that hold application of § 109(g)(2) to be mandatory are persuasive. As a matter of statutory interpretation, legislated law, whenever practicable and plausible, should be read and applied literally. *See Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir.1999) ("[W]e must assume the legislative purpose 'is expressed by the ordinary meaning of the words used.'") (citation omitted); *United States v. Robinson*, 167 F.3d 824, 830–31 (3d Cir.1999) (where the statutory language is plain and unambiguous, the court simply applies the language as written). Here, the plain, ordinary meaning of the word "following" is "coming after or next in order of time." *The Random House Dictionary of the English Language* 551 (Unabridged ed. 1983); *see also In re Richardson*, 217 B.R. at 486–87. While causality—"to be the result of"—is a subsidiary dictionary definition, given the statutory wording and context, that interpretation would be incongruous.

Though this approach may be over-inclusive—covering abuses that Congress was

---

3. *See, e.g., In re Andersson*, 209 B.R. 76, 78 (6th Cir. BAP 1997); *In re Dickerson*, 209 B.R. 703, 707–08 (W.D.Tenn.1997); *Kuo v. Walton*, 167 B.R. 677, 679 (Bankr.M.D.Fla. 1994); *see also In re Narod*, 138 B.R. 478, 483 (E.D.Pa.1992) (application of § 109(g)(2) is "mandatory rather than discretionary"); *In re Madison*, 184 B.R. 686, 694 (Bankr.E.D.Pa. 1995) (" § 109(g)(2) strictly prevents certain tactics on a debtor's part, irrespective of the debtor's actual 'abusive' motive"); *In re Walker*, 171 B.R. 197, 202 (Bankr.E.D.Pa.1994) ("[W]hen the facts of a case fit squarely within the parameters of § 109(g), we cannot let the equities, which may run in favor of a debtor, prevent us from applying the statute.") (citations omitted); Harry Wright, IV, "Must Courts Apply Section 109(g)(2) When

Debtors Intend No Abuse in an Earlier Dismissal of Their Case?" 7 *Bankr.Dev. J.* 103, 119 (1990) (courts should interpret this provision as mandatory).

4. Other decisions, though relying on different reasoning, have also concluded that the legislative purpose should guide the interpretation of § 109(g)(2). *See, e.g., In re Luna*, 122 B.R. 575, 577 (9th Cir. BAP 1991) (discretion should be guided by the equities of the case); *In re Ramos*, 212 B.R. 29, 30 (Bankr.D.P.R. 1997) (equitable exceptions to § 109(g)(2) may be considered); *In re Jones*, 99 B.R. 412, 413 (Bankr.E.D.Ark.1989) (prohibition applies only when a contested motion for relief is pending).

trying to prevent as well as cases where no abuse is evident—a blanket rule to curb potential abuse of the Bankruptcy Code is sensible. *See Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197, 202 (3d Cir. 1998) ("Where the statutory language is plain and unambiguous, further inquiry is not required, except in the extraordinary case where a literal reading of the language produces an absurd result."). Nor is there evidence to suggest that a literal reading of the statute is contrary to Congressional intent. *See id.* ("[A] court may depart from the plain language of a statute only by an extraordinary showing of a contrary congressional intent in the legislative history."); *see also Estate of Gibbs v. United States,* 161 F.3d 242, 250 n. 8 (3d Cir.1998) ("plain language of a statute cannot be ignored for policy reasons") (citing *Estate of Applebaum v. Commissioner,* 724 F.2d 375, 377 (3d Cir.1983)). What is more, any hardship produced by the mandatory application of this provision is partly within a debtor's control in electing to request a dismissal. *See* Harry Wright, IV, "Must Courts Apply Section 109(g)(2) When Debtors Intend No Abuse in an Earlier Dismissal of Their Case?" 7 *Bankr. Dev. J.* 108, 119–20 (1990).

Significantly, appellants, while urging an interpretation that would enable the exercise of discretion, have not proffered reasons to support doing so in this instance. Even if their view of the statute were adopted, they have given no reasons for granting them the right to ask for Bankruptcy Court protection sooner than 180 days. In this sense, appellants' position is more of an abstraction than a justiciable request for equitable consideration. The Bankruptcy Court order of February 22, 1999, barring their return within a shorter interval, will be affirmed.[5]

---

5. The Bankruptcy Court's decision also noted, in the alternative, that even if it had discretion in applying § 109(g)(2), it would not do so in appellants' case. The court detailed the potential for abuse in light of the pending adversary proceeding. *In re Munkwitz,* Bankr.No. 97–34889F, Mem., March 10, 1999, at 8–10.